IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 21-cv-000193-CMA-KMT

CHRISTIAN DIAZ,

Plaintiff,

v.

MARCUS ALLEN, in his official and individual capacity, et al.,
Defendants.

**MOTION TO DISMISS AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**INTRODUCTION**

On two occasions in 2019, Colorado Springs police officers visited the "green faith ministries" property, a church where members "use cannabis" to pray. (Doc. 21 ¶ 7) On those two occasions, Plaintiff was inside Green Faith's premises using cannabis. (*Id.* ¶¶ 7, 34, 36) The officers never stepped foot inside the premises, and they never had any contact with Plaintiff. Plaintiff alleges that he got "scared" by the officers' presence outside the building and chose to "stop[] my prayer and put out my joint" on both occasions. (*Id.* ¶¶ 17, 36-37; *see also id.* ¶¶ 7, 10)

Plaintiff claims that the Officers violated his First Amendment rights of religious exercise and association, retaliated against him for the free exercise of his religion, violated his equal protection rights, and conducted unlawful searches and seizures. (Doc. 21 at 24-29) He further claims that the City has customs of "not respecting the

Constitutional rights of minorities and conducting racially biased policing and unconstitutional searches and seizures," and "the restraint of Free exercise of religion." (Doc. 21 ¶¶ 41, 60) All of Plaintiff's claims should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

### I. Individual Liability Claims

Qualified immunity protects government employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Once the qualified immunity defense is asserted, the plaintiff 'bears a heavy two-part burden' to show, first, 'the defendant's actions violated a constitutional or statutory right,' and, second, that the right was 'clearly established at the time of the conduct at issue.'" *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (citation omitted). The Officers are entitled to qualified immunity.

#### A. Failure to State a Claim for a Constitutional Violation

##### 1. Claim One: Free Exercise of Religion Against All Officers

"To establish a free-exercise claim, [Plaintiff] must show that the government has placed a burden on the exercise of his religious beliefs or practices." *Fields v. City of Tulsa*, 753 F.3d 1000, 1009 (10th Cir. 2014). Only action that is "'coercive or compulsory in nature'" is sufficiently burdensome to support a Free Exercise claim. *Id.*

Plaintiff's Complaint is devoid of any factual allegation that the Individual Defendants burdened his ability to freely exercise his religious beliefs. In both instances,

it was Plaintiff who chose to stop praying with cannabis. (Doc. 21 ¶¶ 10, 35-36) Plaintiff alleges that Officer Allen "forced me into a non consensual interrogation that did cause me to stop my prayer" (*id.* ¶ 10), but he does not allege that Officer Allen ever contacted him. Plaintiff does not allege that Officers Bresson and Hamaker put the church on "lock down," purportedly causing him to choose to "stop[] my prayer and put out my joint." (*Id.* ¶ 35-36) Plaintiff fails to allege any direct contact with any Officer, let alone that any of them directly coerced or compelled him to cease worshiping.

### 2. Claim Two: Retaliation for Free Exercise of Religion Against All Officers

To succeed on a First Amendment retaliation claim, plaintiff must show: (1) he "was engaged in constitutionally protected activity"; (2) defendants' "actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) defendants' "adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Plaintiff fails to allege all three of these elements. Plaintiff's use of cannabis is not religious activity protected by the First Amendment. *See United States v. Quaintance*, 471 F. Supp.2d 1153, 1170 (D.N.M. 2006), *aff'd,* 608 F.3d 717 (10th Cir. 2010).

Second, Defendants' conduct would not chill a person of ordinary firmness from continuing to use cannabis to pray. This element is judged against an objective standard and precludes claims based on "a trivial or de minimis injury." *Eaton v. Meneley*, 379 F.3d 949, 954-55 (10th Cir. 2004) (internal quotation marks omitted). The Officers' brief visits to the exterior of the property would not chill anyone from continuing to worship.

Third, Plaintiff fails to allege that the Defendants acted with retaliatory intent. "Allegedly protected [religious exercise] cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected [exercise]." *Sheker v. Grimes*, No. 94-6312, 1995 WL 330749, at *3 (10th Cir. June 5, 1995). Under Plaintiff's allegations, Defendants did not even know that Plaintiff was at Green Faith, let alone that they knew he was exercising his religion inside the premises when they visited the exterior of the building. Plaintiff alleges that the Officers knew about the owners' and the reverend's complaints about police activity at the location (*see* Doc. 21 ¶¶ 13, 24), but such allegations do not make it plausible that the Officers intended to retaliate against *Plaintiff*—whom they never saw nor contacted—for using cannabis.

### 3.  Claim Three: Equal Protection Against All Officers

Plaintiff alleges that he is "a member of a protected class" and that Defendants violated his equal protection rights. (Doc. 21 ¶ 61) "The allegation that a plaintiff was treated differently from those similarly situated is an essential element of an equal protection action." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir. 1998). Here, Plaintiff alleges, "I have never seen this type of conduct happened [sic] to white owned religions organization [sic]. Or any religious organization_where [sic] the parishioners are majority white." (Doc. 21 ¶ 56) But Plaintiff—a non-white *individual* who is a member of a cannabis-worshiping church—is not similarly situated to a "white owned religious *organization*" or a religious *organization* where a majority of the parishioners are white. (*Id.* (emphasis added)) Plaintiff fails to allege differential treatment by the Officers.

4

Nor does Plaintiff allege facts showing that "the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003). It is implausible that the Individual Defendants discriminated against him based on "the color of [his] skin," considering that Plaintiff does not allege that they ever laid eyes on him. (Doc. 21 ¶¶ 10 ("Defendant Allen could not see me"), 28, 34-37)

### 4. Claim Four: First Amendment Right of Association Against All Officers

Plaintiff claims that the Officers "targeted" and "harass[ed]" him "for who [he] associate[s] with," in violation of his right of association. (Doc. 21 ¶¶ 13, 28, 64)

The First Amendment protects two kinds of association: (1) intimate or private association and (2) expressive association. *See Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 658 (10th Cir. 2006). Intimate association protects the right "to enter into and maintain certain intimate human relationships," such as those that "attend the creation and sustenance of a family"—marriage, childbirth, the raising of children, and cohabitation with one's relatives. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617, 619 (1984). Plaintiff does not allege a violation of his intimate association rights.

Expressive association is the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Jaycees*, 468 U.S. at 618. To state a such a claim, Plaintiff must allege that the Officers prevented him from associating with others for expressive purposes. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000).

5

In this case, Plaintiff fails to allege both that he was engaged in activity protected by the First Amendment and that the Officers prevented him from associating for expressive purposes. First, using marijuana is not a form of protected expressive activity. *See Goodpastor v. City of Indianapolis*, 736 F.3d 1060, 1073 (7th Cir. 2013); *Taverns for Tots, Inc. v. City of Toledo*, 341 F. Supp.2d 844, 854 (N.D. Ohio 2004) (same). It is a crime under federal law, *Sladek v. Town of Palmer Lake*, No. 13-cv-02165-PAB-MEH, 2014 WL 789080, at *5 (D. Colo. Feb. 27, 2014), and "there is no right to join with others to engage in illegal activities that are not protected by the First Amendment." *U.S. v. Wilson*, 154 F.3d 658, 665 (7th Cir. 1998). Second, Plaintiff does not allege that the Officers prevented him from associating with others for expressive purposes at any point. They had no contact with Plaintiff; they did not force Plaintiff to disassociate with anyone.

### 5. Claim Five: Fourth Amendment Search Against All Officers

Plaintiff complains that the Officers conducted unlawful searches. (Doc. 21 ¶¶ 9, 68). A "search" occurs "[w]hen 'the Government obtains information by physically intruding' on persons, houses, papers, or effects.' " *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (citations omitted). "A search only violates an individual's Fourth Amendment rights if he or she has a 'legitimate expectation of privacy in the area searched.'" *United States v. Ruiz*, 664 F.3d 833, 838 (10th Cir. 2012).

#### a. Officer Allen

Plaintiff fails to state a claim against Officer Allen based on a "search of [his] person." (Doc. 21 ¶ 9) Plaintiff does not allege that Officer Allen ever contacted him.

Plaintiff likewise fails to allege that Officer Allen unlawfully searched the Green Faith premises. First, Plaintiff fails to allege that Officer Allen conducted a search. He alleges that Officer Allen "approached the door," "yell[ed] through the door," and "demand[ed] that I open the door." (Doc. 21 ¶¶ 7, 9, 10) But Officer Allen "could not see [Plaintiff] through the door," and it is not alleged that Officer Allen ever entered the building. (*Id.* ¶ 10) An *attempted* search is not actionable. *Doe v. McAfee*, 13–CV–01287–MSK–MJW, 2014 WL 4852274, at *4 (D. Colo. Sept. 29, 2014). Because Plaintiff fails to allege that Officer Allen obtained any information from his visit to the property, he fails to allege that Officer Allen conducted a search. *See Clark v. City of Williamsburg*, 844 Fed. Appx. 4, 16 (10th Cir. 2021) (where officer "gathered no information" in attempted knock-and-talk, "no 'search' occurred for purposes of the Fourth Amendment").[1]

Second, Plaintiff fails to allege that he had a legitimate expectation of privacy in the areas that Officer Allen physically entered—the parking lot and the front porch of the Green Faith property. (Doc. 21 at 5-6, ¶ 12) From Plaintiff's photos, the parking lot appears "open and visible from the public roads bordering it." *United States v. Ludwig*, 10 F.3d 1523, 1526 (10th Cir. 1993). Plaintiff does not allege "that the lot was fenced, that a gate prevented unauthorized entry, or even that signs restricted entry to the parking lot." *Id.* Thus, Plaintiff lacked a reasonable expectation of privacy in the parking lot. *See id.*

---

[1] In a separate but related case, Magistrate Judge Tafoya found—before withdrawing her recommendation for procedural reasons—that the complaint arising out of this same incident failed to state a Fourth Amendment claim against Officer Allen. *See Sgaggio v. Poole*, No. 19-cv-01975-PAB-KMT (D. Colo. Feb. 28, 2020) (Doc. 36, order granting in part defendants' motion to dismiss, at 18-19; Doc. 42).

The same is true of the building's front porch. The photographs in the Amended Complaint show that the porch was visible and open to the public. (*See* Doc. 21 at 5-6) Its only apparent purpose was to provide public access to the front door. Plaintiff thus lacked a reasonable expectation of privacy in the front porch. *See United States v. Larson*, 63 Fed. Appx. 416, 424 (10th Cir. 2003).

Plaintiff nonetheless contends that the "implied license" to enter the front porch "to knock and talk" with the occupants was revoked by the posting of a "legal notice" on the front door. (Doc. 21 ¶¶ 6, 24) "Ordinarily a police officer, like any citizen, has an implied license to approach a home, knock on the front door, and ask to speak with the occupants." *United States v. Carloss*, 818 F.3d 988, 990 (10th Cir. 2016). A "No Trespassing" sign does not revoke the implied license where it would not "clearly and unambiguously" convey "to an objective officer that he could not approach the house and knock on the front door seeking to have a consensual conversation with the occupants." *Id.* at 990, 997 (affirming that "No Trespassing" sign posted on front door "did not clearly revoke the implied license" to knock-and-talk with the residents).

In this case, the posted notice failed to revoke Officer Allen's implied license to enter onto the front porch of the Green Faith building and knock on the front door in an attempt to speak with the occupants. First, the notice was posted on the front door itself. (Doc. 21 ¶ 24 ("My right to privacy at my church was posted on the front door.")) It could not have been read *without* entering onto the porch. (*See id.* at 5-6 (photos)) Accepting Plaintiff's allegations as true, nothing gave Officer Allen notice of any purported revocation

8

of the implied license *before* he reached the front door. Thus, Officer Allen lawfully entered the front porch pursuant to the implied license.

Second, once lawfully on the building's front porch, an objective officer would not have understood the notice to revoke "clearly and unambiguously" the implied license to knock-and-talk with the occupants. The notice states:

> Warning—Private Property, No trespassing Without the owners [sic] express verbally [sic] or written authorization. This includes any and all Government Agents except in case of fire or medical emergency…. [T]he owners of this property requires all public officials, agents, or persons abide by the supreme law of the land the US constitution ratified amendments then owners refused to permit any access search audit assessment without the presentation of warrant.

(Doc. 21 ¶ 6, at p. 4) An objective officer reasonably could have understood the notice "as restating the 'no-trespassing' principle without thinking it had any bearing on the implicit license to enter the curtilage for social reasons." *Carloss*, 818 F.3d at 999-1000 (Tymkovich, C.J., concurring). The officer "might well take" the "sign simply to reiterate that he could not enter the property *if* he was forbidden to do so, not that it actually forbade him to enter." *Id.* at 1000 n.1 (emphasis in original). The notice further states "[t]hose so trespassing are subject to civil and criminal penalties …." (Doc. 21 at 4) But "state law is not determinative of objective 'reasonableness'" under the Fourth Amendment. *Id.* at 1001. Because "[t]he message here does not clearly and unambiguously tell [visitors] that they cannot knock on the front door seeking a consensual conversation with [the occupants]," Officer Allen's attempted knock-and-talk was reasonable. *Id.* at 997.

### b. Officers Bresson and Hamaker

Plaintiff alleges that Officers Bresson and Hamaker only physically entered the parking lot of the Green Faith property. (Doc. 21 ¶¶ 24-32) Plaintiff fails to allege that they gathered any information from him or the Green Faith property at any point and, thus, fails to allege that they conducted a search. *See Clark*, 844 Fed. Appx. at 16. Plaintiff also fails to allege a legitimate expectation of privacy in the property's parking lot. *See Ludwig*, 10 F.3d at 1526.

### 6. Claim Six: Fourth Amendment Seizure Against Officer Allen

Plaintiff asserts that Officer Allen "seized" him in violation of the Fourth Amendment. (Doc. 21 ¶ 7, at p. 29) A seizure of a person " 'requires an intentional acquisition of physical control'… by the state." *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007) (citation omitted) (plaintiff who "was never arrested, incarcerated, or otherwise placed under the direct physical control of the state … was not seized under the Fourth Amendment" (*id.* at 915-16)). First, Plaintiff fails to allege that Officer Allen ever exerted physical control over his person. Second, Plaintiff fails to allege that any physical control over his person that he *felt* was intended by Officer Allen. According to Plaintiff, Officer Allen did not even know that Plaintiff was present behind the door. (Doc. 21 ¶ 10) Whatever physical control he exerted over Plaintiff could not have been intentional.

### 7. Supervisory Capacity Claims Against Eric Anderson

Plaintiff asserts claims one through five against Sgt. Anderson, alleging that he failed to "correct[]" and "cover[ed]" for Officers Bresson's and Hamaker's constitutional violations. (Doc. 21 ¶¶ 28-33. "A plaintiff arguing for the imposition of supervisory liability

'… must show an "affirmative link" between the supervisor and the constitutional violation.' The requisite showing of an affirmative link between a supervisor and the alleged constitutional injury has three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Baltierra v. Adams Cty., Colo.*, No. 18-CV-00664-CMA-MEH, 2019 WL 1331914, at *8 (D. Colo. Mar. 25, 2019). In addition to failing to allege a constitutional violation by Sgt. Anderson's subordinates, Plaintiff fails to allege any of these elements.[2]

## B. No Clearly Established Right

Plaintiff also cannot meet his burden to show that the Officers violated any *clearly established* constitutional right. For this independent reason, all of Plaintiff's claims (which seek only monetary relief (*see* Doc. 21 at 30)) should be dismissed.

## II. Municipal Liability Claims

Plaintiff asserts five of his claims—violation of free exercise, retaliation for free exercise, denial of equal protection, violation of associational rights, and unlawful search—against the City. (Doc. 21 at 24-28) In addition to showing that a municipal employee committed an underlying constitutional violation, to state a claim against the City, Plaintiff must show the existence of an official policy or custom; a direct causal link between the policy or custom and the injury alleged; and deliberate indifference on the part of the municipality. *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1283-84 (10th Cir. 2020).

---

[2] Magistrate Judge Tafoya already found, before withdrawing her recommendation, that a complaint arising out of this same incident failed to state a supervisory liability claim against Sgt. Anderson. *See Sgaggio v. Poole*, No. 19-cv-01975-PAB-KMT (D. Colo. Feb. 28, 2020) (Doc. 36 at 19; Doc. 42).

11

### A. No Constitutional Violation By an Employee

Because Plaintiff fails to allege a plausible constitutional violation by any City employee (*see supra* Part I at 2-11), he fails to state a claim against the City.

### B. Existence of an Official Policy or Custom

A municipal policy or custom may take various forms. *See Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010). In this case, Plaintiff bases his municipal liability claim on allegations of informal customs amounting to a widespread practices. (*See* Doc. 21 ¶¶ 41-56) Plaintiff alleges that the City has customs of "not respecting the Constitutional rights of minorities and conducting racially biased policing and unconstitutional searches and seizures," and "the restraint of Free exercise of religion." (Doc. 21 ¶¶ 41, 60)

"A 'custom' has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (citation omitted). "In order to establish a custom, the actions of the municipal employees must be 'continuing, persistent and widespread.'" *Id.* (citation omitted).

Plaintiff appears to rely on five lawsuits based on events occurring between 2012 and 2020 to show that the City had the alleged customs on January 21, 2019 and April 20, 2019. (Doc. 21 at 20-24) Plaintiff's allegations fail to demonstrate the existence of such customs for many reasons.

First, Plaintiff's allegations consist of mere accusations by other plaintiffs against other City police officers and, thus, should be disregarded as "entirely conclusory." *Metzler v. City of Colo. Springs*, No. 19-cv-878-RM-KMT, 2020 WL 533735, at *5 (D. Colo.

12

Feb. 3, 2020). *See also Baltierra*, 2019 WL 1331914, at *7 ("Listing lawsuits and cases filed against predecessor organizations in various states over the years does not constitute evidence [of] an official policy or custom."); *Duran v. City & Cty. of Denver*, No. 10-CV-01569-REB-KMT, 2012 WL 4478800, at *2 (D. Colo. Sept. 28, 2012) (dismissing municipal liability claim based on others' excessive force complaints because court would not assume the claims "were meritorious"; "'People may file a complaint for many reasons, or for no reason at all.'" (citation omitted)).

Second, Plaintiff's list of lawsuits fails to show that "similarly situated individuals were mistreated by the municipality in a similar way." *Carney*, 534 F.3d at 1274. Only one of the lawsuits purportedly involved accusations of "racial discrimination in [CSPD's] handling of" some unspecified "incident" at a "predominantly Black church." (Doc. 21 ¶ 55) Plaintiff does not allege that any incidents involved the plaintiff's religious exercise with the use of cannabis. The "instances have little in common with the circumstances" giving rise to Plaintiff's Amended Complaint and "are not relevant here." *Metzler*, 2020 WL 533735, at *5. *See also Harris v. City & Cty. of Denver*, 19-cv-572-MEH, 2019 WL 6876870, at *12 (D. Colo. Dec. 17, 2019).

Third, Plaintiff fails to allege outcomes of the five lawsuits showing an unconstitutional custom. For one of the lawsuits, Plaintiff fails to allege any outcome. (Doc. 21 ¶¶ 47-48) "'[T]he mere fact that a lawsuit was filed without any mention of the disposition of the lawsuit or whether the City was found to have violated any rights does not establish a pattern and practice.'" *Estate of Lobato by & through Montoya v. Correct Care Sols., LLC*, No. 15-CV-02718-PAB-STV, 2017 WL 1197295, at *8 (D. Colo. Mar. 31,

2017) (citation omitted). The City allegedly settled two of the five lawsuits, but a settlement "'is not even evidence of wrongdoing, let alone that the City has a custom or policy that fosters or results in wrongdoing.'" *Id.* (citation omitted). Two of the lawsuits are still pending. (Doc. 21 ¶¶ 38, 55)

Fourth, the lawsuits, based on five incidents in eight years, are too few in number to show a "'continuing, persistent and widespread'" custom of any kind. *Carney*, 534 F.3d at 1274 (citation omitted). Only three cases involved African American subjects. (Doc. 21 ¶¶ 45, 51, 55) In 2019, the City's population exceeded 477,000, making it the second largest city in Colorado.[3] Even five accusations over a period of eight years hardly shows a continuing, persistent and widespread practice of unconstitutional conduct by the City's police officers. *See Lankford v. City of Hobart*, 73 F.3d 283, 287 (10th Cir. 1996) ("'isolated and sporadic acts'" did not amount to a custom under § 1983 (citation omitted)).

### C. Causation

Plaintiff must also allege "'a direct causal link between the municipal action and the deprivation of federal rights.'" *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (citation omitted). This means that "'the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'" *Id.* (citation omitted). On a municipal liability claim, "'rigorous standards

---

[3] *See* https://demography.dola.colorado.gov/population/population-totals-municipalities/#population-totals-for-colorado-municipalities, "Municipalities Ranked by Population," last visited June 17, 2021. "A court may consider 'matters of which a court may take judicial notice,'" such as demographic information from a government-hosted website, "in a Rule 12(b)(6) analysis." *Harris*, 2019 WL 6876870, at *12 & n.6 (citation omitted).

of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.'" *Id.* (citation omitted).

In this case, Plaintiff alleges municipal causation only in a conclusory fashion. (*See* Doc. 21 ¶ 66) No facts are alleged that plausibly suggest a direct causal link between any action of the City and any constitutional violation. *See Weitzman v. City & Cty. of Denver*, No. 17-cv-02703-KLM, 2019 WL 1438072, at *15 (D. Colo. Mar. 31, 2019).

### D.  State of Mind

Finally, to the extent the element is required to be alleged, Plaintiff fails to allege any facts "from which a factfinder could infer a deliberately indifferent decision." *Garcia v. Adams Cty., Colo.*, No. 16-cv-01977-PAB-NYW, 2017 WL 4251931, at *4 (D. Colo. Sept. 25, 2017).

### **CONCLUSION**

All of Plaintiff's claims in the Complaint should be dismissed with prejudice. Respectfully submitted this 18th day of June, 2021.

> OFFICE OF THE CITY ATTORNEY OF
> COLORADO SPRINGS, COLORADO
> Wynetta P. Massey, City Attorney
>
> */s/ Anne H. Turner*
> Anne H. Turner, Assistant City Attorney
> 30 S. Nevada Ave., Suite 501
> Colorado Springs, Colorado 80903
> Telephone:  (719) 385-5909
> anne.turner@coloradosprings.gov
>
> Attorneys for Defendants

## **CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on the 18th day of June, 2021, I electronically filed the foregoing **MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing. I further certify that a true and correct copy of the same was mailed to the following party via U.S. Mail, postage pre-paid, addressed as follows:

Christian Diaz
1850 North Academy Blvd.
Colorado Springs, CO  80909
*Pro Se Plaintiff*

                                        */s/Terry JoHansen*
                                        Terry JoHansen