IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21–cv–00193–CMA–KMT

CHRISTIAN DIAZ,

    Plaintiff,

v.

MARCUS ALLEN, in his official and individual capacity,
TYLER BRESSON, in his official and individual capacity,
NICHOLAS HAMAKER, in his official and individual capacity,
ERIC ANDERSON, in his official and individual capacity,
CITY OF COLORADO SPRINGS, and
JOHN DOES 1-50

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on Defendants' "Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 28 [Mot.], filed June 18, 2021), to which Plaintiff responded in opposition (Doc. No. 33 [Resp.], filed July 2, 2021) and Defendants replied (Doc. No. 34 [Resp.], filed July 7, 2021).

### STATEMENT OF THE CASE

Plaintiff, who proceeds *pro se*, filed his Amended Complaint on June 4, 2021. (Doc. No. 21 [Am. Compl.].) Plaintiff states he is a member of a protected class who "wish[es] to pray how [his] ancestors prayed." (*Id.*, ¶ 3.) Plaintiff complains about two incidents in which he

alleges he has been targeted for his religious beliefs and because of the color of his skin.[1] (*Id.*, ¶ 5.)

First, Plaintiff alleges on January 21, 2019, he was sitting at a table at what used to be Green Faith Ministries in Colorado Springs. (*Id.*, ¶ 7.) At around 8:00 p.m., Defendant Allen approached the door, which made Plaintiff nervous, as Plaintiff states his "religious sacrament was wrapped in hemp paper" to "use . . . as a burn offering to the Spirit," which is how Plaintiff states he practices his indigenous spirituality." (*Id.*) Plaintiff state he uses cannabis to pray his sincerely held belief. (*Id.*) Plaintiff states Defendant Allen yelled at "the door man" to open the door but did not explain why. (*Id.*, ¶¶ 9–10.) Plaintiff states he saw more police vehicles pulling up to the building, and he had a panic attack because he is on probation for a driving violation, and he knew that praying with marijuana could be misinterpreted as illegal activity. (*Id.*, ¶¶ 11, 14.)

Second, Plaintiff states on April 20, 2019, when he was in the outdoor prayer area of the church, Defendants Bresson and Hamaker, who apparently were investigating a traffic accident, were blocking the entrance to Plaintiff's church, despite having no "implied license for officers to occupy the church's private property." (*Id.*, ¶¶ 24, 30, 32.) Plaintiff claims the defendants "had a chilling effect on [his] free exercise" rights. (*Id.*)

Plaintiff asserts claims for First Amendment violation of free exercise of religion (*id.*, ¶ 57), retaliation (*id.*, ¶¶ 58–60), violation of the right to associate (*id.*, ¶¶ 62–66), and claims for

---

[1] Plaintiff states he has been targeted on three separate occasions (*id.*); however, he only details two in his complaint.

2

Fourth Amendment unlawful search and seizure (*id.*, ¶¶ 67–71, 72–76).  Plaintiff seeks compensatory and punitive damages.  (*Id.* at 30.)

Defendants move to dismiss the claims against them in their entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Mot.)

## STANDARDS OF REVIEW

### A.     Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  The plaintiff's *pro se* status does not entitle him to application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B.    *Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.  The dismissal is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion

4

to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

### C.     *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

### A.  *Eleventh Amendment Immunity*

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has been interpreted to bar a suit by a citizen against the citizen's own state in federal court. *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). Suits against state officials in their official capacity should be treated as suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment thus shields state officials, acting in their official capacities,

6

from claims for monetary relief. *See Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007). Moreover, a § 1983 action may only be brought against a person. *See* 42 U.S.C. § 1983. Neither states nor state officers sued in their official capacity for monetary damages are persons within the meaning of § 1983. *Will*, 491 U.S. at 70–71.

Therefore, Plaintiff's official-capacity claims for money damages are barred by the Eleventh Amendment and should dismissed for lack of subject matter jurisdiction.[2] *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994).

**B.  *Free Exercise Claim***

"To establish a free-exercise claim, [Plaintiff] must show that the government has placed a burden on the exercise of his religious beliefs or practices." *Fields v. City of Tulsa*, 753 F.3d 1000, 1009 (10th Cir. 2014). Only action that is "coercive or compulsory in nature" is sufficiently burdensome to support a Free Exercise claim. *Id.* (quotation omitted).

Plaintiff's Complaint is devoid of any factual allegation that the defendants burdened his ability to freely exercise his religious beliefs. Rather, Plaintiff alleges he chose to stop praying with cannabis. (Doc. 21 ¶¶ 10, 35–36.) Plaintiff alleges on January 21, 2019, Defendant Allen "forced [Plaintiff] into a non consensual interrogation that did cause [Plaintiff] to stop [his] prayer" and also alleges Defendant Allen demanded that "the door man" open the door. (*Id.*, ¶ 10.) Plaintiff does not allege that Defendant Allen ever directly contacted Plaintiff or told Plaintiff to stop smoking cannibis. Plaintiff also alleges on April 20, 2019, that Defendants

---

[2] Defendants did not move for the dismissal of the official-capacity claims for money damages on this basis. However, the court has a duty to consider its subject matter jurisdiction *sua sponte*, Fed. R. Civ. P. 12(h)(3). *See also McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988) (The issue of subject matter jurisdiction may be raised *sua sponte* by the court at any time during the course of the proceedings.).

Bresson and Hamaker put the church on "lock down" during the accident investigation, purportedly causing Plaintiff to choose to "stop[] [his] prayer and put out [his] joint." (*Id.*, ¶¶ 35–36.)  However, Plaintiff fails to allege any direct contact with any defendant, let alone that any of them directly coerced or compelled him to cease worshiping.

Plaintiff's free exercise claim should be dismissed.

### C.     Retaliation for Free Exercise Claim

To succeed on a First Amendment retaliation claim, Plaintiff must show (1) he "was engaged in constitutionally protected activity"; (2) defendants' "actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) defendants' "adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Plaintiff fails to allege the defendants acted with retaliatory intent.  "Allegedly protected [religious exercise] cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected [exercise]." *Sheker v. Grimes*, No. 94–6312, 1995 WL 330749, at *3 (10th Cir. June 5, 1995).  Even if smoking cannabis for religious purposes is protected, Plaintiff's complaint is devoid of any allegations that Plaintiff was at Green Faith or that they knew he was exercising his religion by smoking cannabis inside the premises when they visited the exterior of the building.  Though Plaintiff alleges that the defendants knew about the owners'

complaints about police activity at the location (*see* Am. Compl., ¶¶ 13, 24), such allegations do not make it plausible that the defendants intended to retaliate against Plaintiff—whom they never saw nor contacted—for using cannabis.

Plaintiff's retaliation claim should be dismissed with prejudice.

### D.     *Equal Protection Claim*

Plaintiff alleges that he is "a member of a protected class" and that Defendants violated his equal protection rights.  (Am. Compl., ¶ 61.)  "The allegation that a plaintiff was treated differently from those similarly situated is an essential element of an equal protection action." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir. 1998).

Plaintiff alleges, "I have never seen this type of conduct happened [sic] to white owned religions organization [sic].  Or any religious organization_where [sic] the parishioners are majority white."  (Am. Compl., ¶ 56.)  However, Plaintiff—a non-white individual who is a member of a cannabis-worshiping church—is not similarly situated to a "white owned religious organization" or a religious organization where a majority of the parishioners are white.  Plaintiff fails to allege differential treatment by the defendants.  Nor does Plaintiff allege facts showing that "the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose."  *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003).  It is implausible that the defendants discriminated against him based on "the color of [his] skin," considering that Plaintiff does not allege that they ever laid eyes on him.  (Am. Compl., ¶¶ 10 ["Defendant Allen could not see me"], 28, 34–37.)

Plaintiff's equal protection claim should be dismissed with prejudice.

9

E.  **Right of Association Claim**

Plaintiff claims that the Officers "targeted" and "harass[ed]" him "for who [he] associate[s] with," in violation of his right of association.  (Am. Compl., ¶¶ 13, 28, 64.)

The First Amendment protects two kinds of association: (1) intimate or private association and (2) expressive association.  *See Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 658 (10th Cir. 2006).  Intimate association protects the right "to enter into and maintain certain intimate human relationships," such as those that "attend the creation and sustenance of a family"—marriage, childbirth, the raising of children, and cohabitation with one's relatives.  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617, 619 (1984).  Plaintiff does not allege a violation of his intimate association rights.

Expressive association is the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion."  *Jaycees*, 468 U.S. at 618.  To state such a claim, Plaintiff must allege that the defendants prevented him from associating with others for expressive purposes.  *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000).

Plaintiff fails to allege that the defendants prevented him from associating for expressive purposes.  Defendants had no contact with Plaintiff, and they not force Plaintiff to disassociate with anyone.  Accordingly, Plaintiff's right of association claim should be dismissed.

F.  **Illegal Search Claim**

Plaintiff complains that the Officers conducted unlawful searches.  (Am. Compl., ¶¶ 9, 68.)

A "search" occurs "[w]hen 'the Government obtains information by physically intruding' on persons, houses, papers, or effects.' " *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (citations omitted). "A search only violates an individual's Fourth Amendment rights if he or she has a 'legitimate expectation of privacy in the area searched.' " *United States v. Ruiz*, 664 F.3d 833, 838 (10th Cir. 2012).

### 1. *Defendant Allen*

Plaintiff fails to state a claim against Officer Allen based on a "search of [his] person." (*See* Am. Compl., ¶ 9 ["There was no reasonable suspicion for the search of my person. . . ."].) Plaintiff does not allege that Defendant Allen ever had contact with Plaintiff other than through a door. (*Id.*, ¶¶ 7, 9, 10.) An attempted search is not actionable. *Doe v. McAfee*, 13–CV–01287–MSK–MJW, 2014 WL 4852274, at *4 (D. Colo. Sept. 29, 2014).

Plaintiff also fails to allege that he had a legitimate expectation of privacy in the areas that Defendant Allen physically entered—the parking lot and the front porch of the Green Faith property. (Am. Compl. at 5–6, ¶ 12.) From the photos contained within the complaint, the parking lot appears "open and visible from the public roads bordering it." *United States v. Ludwig*, 10 F.3d 1523, 1526 (10th Cir. 1993). Plaintiff does not allege "that the lot was fenced, that a gate prevented unauthorized entry, or even that signs restricted entry to the parking lot." *Id.* Thus, Plaintiff lacked a reasonable expectation of privacy in the parking lot. *Id.*

Moreover, the photographs in the complaint show that the porch was visible and open to the public. (Am. Compl. at 5–6.) Plaintiff thus lacked a reasonable expectation of privacy in the front porch. *See United States v. Larson*, 63 Fed. Appx. 416, 424 (10th Cir. 2003).

Plaintiff contends that the "implied license" to enter the front porch "to knock and talk" with the occupants was revoked by the posting of a "legal notice" on the front door. (Am. Compl., ¶¶ 6, 24.) "Ordinarily a police officer, like any citizen, has an implied license to approach a home, knock on the front door, and ask to speak with the occupants." *United States v. Carloss*, 818 F.3d 988, 990 (10th Cir. 2016). A "No Trespassing" sign does not revoke the implied license where it would not "clearly and unambiguously" convey "to an objective officer that he could not approach the house and knock on the front door seeking to have a consensual conversation with the occupants." *Id.* at 990, 997 (affirming that "No Trespassing" sign posted on front door "did not clearly revoke the implied license" to knock-and-talk with the residents).

Here, the posted notice failed to revoke Defendant Allen's implied license to enter onto the front porch of the Green Faith building and knock on the front door in an attempt to speak with the occupants. First, the notice was posted on the front door itself. (Am. Compl., ¶ 24 ["My right to privacy at my church was posted on the front door."].) Thus, the notice could not have been read without entering onto the porch. Accepting Plaintiff's allegations as true, nothing gave Defendant Allen notice of any purported revocation of the implied license before he reached the front door. Thus, Defendant Allen lawfully entered the front porch pursuant to the implied license.

Second, once lawfully on the building's front porch, an objective officer would not have understood the notice to revoke "clearly and unambiguously" the implied license to knock-and-talk with the occupants. The notice states:

> Warning—Private Property, No trespassing Without the owners [sic] express verbally [sic] or written authorization. This includes any and all Government Agents except in case of fire or medical emergency.… [T]he owners of this property requires all public officials, agents, or persons abide by the supreme law

12

> of the land the US constitution ratified amendments then owners refused to permit any access search audit assessment without the presentation of warrant.

(Am. Compl., ¶ 6 & at 4.)  An objective officer reasonably could have understood the notice "as restating the 'no-trespassing' principle without thinking it had any bearing on the implicit license to enter the curtilage for social reasons." *Carloss*, 818 F.3d at 999–1000 (Tymkovich, C.J., concurring).  The officer "might well take" the "sign simply to reiterate that he could not enter the property *if* he was forbidden to do so, not that it actually forbade him to enter." *Id.* at 1000 n.1 (emphasis in original).  The notice further states, "Those so trespassing are subject to civil and criminal penalties .…" (Am. Compl. at 4.)  But "state law is not determinative of objective 'reasonableness'" under the Fourth Amendment. *Id.* at 1001.  Because "[t]he message here does not clearly and unambiguously tell [visitors] that they cannot knock on the front door seeking a consensual conversation with [the occupants]," Defendant Allen's attempted knock-and-talk was reasonable. *Id.* at 997.

### 2. *Defendants Bresson and Hamaker*

Plaintiff alleges that Defendants Bresson and Hamaker entered the parking lot of the Green Faith property. (*See* Am. Compl., ¶¶ 24–32.)  Plaintiff fails to allege that the defendants gathered any information from him or the Green Faith property at any point and, thus, fails to allege that they conducted a search. *See Clark*, 844 Fed. Appx. at 16.  Plaintiff also fails to allege a legitimate expectation of privacy in the property's parking lot. *See Ludwig*, 10 F.3d at 1526.

Plaintiff's illegal search claims against Defendants Allen, Bresson, and Hamaker should be dismissed with prejudice.

### G. *Illegal Seizure Claim*

Plaintiff asserts that Defendant Allen "seized" him in violation of the Fourth Amendment. (Am. Compl., ¶ 7 & at 29.)

A seizure of a person " 'requires an intentional acquisition of physical control'… by the state." *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007) (citation omitted). A plaintiff "was never arrested, incarcerated, or otherwise placed under the direct physical control of the state … was not seized under the Fourth Amendment." *Id.* at 915–16.

Here, Plaintiff fails to allege that Defendant Allen ever exerted physical control over his person. Plaintiff also fails to allege that any physical control over his person that he felt was intended by Defendant Allen. According to Plaintiff, Defendant Allen did not even know that Plaintiff was present behind the door. (Am. Compl., ¶ 10.) Accordingly, whatever alleged physical control he exerted over Plaintiff could not have been intentional.

Plaintiff's illegal seizure claim should be dismissed with prejudice.

### H.    *Supervisory Liability Claims Against Defendant Anderson*

Plaintiff asserts claims one through five against Defendant Anderson, alleging that he failed to "correct[]" and "cover[ed]" for Defendants Bresson and Hamaker's constitutional violations. (Am. Compl., ¶¶ 28–33.)

Supervisory officials may be held liable in their individual capacity. However, § 1983 does not allow claims against supervisors under a theory of respondeat superior. *Cox v. Glanz*, 800 F.3d 1231, 1248 n.9 (10th Cir. 2015). A § 1983 claim against a defendant is his personal capacity for supervisory liability "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, or implements a policy which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Id.* at 1248

14

(alterations incorporated). Thus, a plaintiff must show that a subordinate violated the Constitution and an affirmative link between the supervisor and the constitutional violation. *Id.* An "affirmative link" requires "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).

The court has determined that the claims against Defendant Anderson's subordinates should be dismissed. Accordingly, Plaintiff's claims against Defendant Anderson should also be dismissed. *See id.*

## I.   *Qualified Immunity*

Defendants argue they are entitled to qualified immunity on any individual capacity claims asserted against them. (Mot. at 2–11.)

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The court has discretion to address the "clearly established" element before addressing whether a constitutional violation actually occurred. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Once the defendant raises a qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the law was clearly established at the relevant time. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014); *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000). "A right is clearly established in this circuit when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of

authority from other courts shows that the right must be as the plaintiff maintains." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted).

Because the court has recommended dismissal of all of the claims against the defendants for failure to state claims upon which relief can be granted, the defendants should be granted qualified immunity on the claims.

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that the "Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) be **GRANTED**. Plaintiff's official-capacity claims for money damages are barred by the Eleventh Amendment and should dismissed for lack of subject matter jurisdiction. Plaintiff's constitutional claims should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). The defendants should be granted qualified immunity on the claims asserted against them in their individual capacities.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make

timely objections may bar de novo review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation de novo despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of January, 2022.

BY THE COURT:

*[signature]*

Kathleen M. Tafoya
United States Magistrate Judge