IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO


Civil Action No. 21–cv–00193–CMA–KMT

CHRISTIAN DIAZ,

Plaintiff,

v.

MARCUS ALLEN, in his official and individual capacity,

TYLER BRESSON, in his official and individual capacity,

NICHOLAS HAMAKER, in his official and individual capacity,

ERIC ANDERSON, in his official and individual capacity,

CITY OF COLORADO SPRINGS, and

JOHN DOES 1-50

Defendants.

_____

OBJECTION TO RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE.

 I Christian Diaz Pro Se **OBJECT** to the following recommendation of United States Magistrate Judge Kathleen M Tafoya. (Doc 38).

1

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE will be know as RMJ in this document.

## Standard of Review

This rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Id. (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991));

In determining whether a dismissal is proper, we must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir.2002).

I proceeded pro se, this Court "must construe [my] complaint liberally, holding [me] to a less stringent standard than formal pleadings drafted by lawyers." *Butler v. Compton*, 158 F. App'x 108, 110 (10th Cir. 2005).

A district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). See *McDonald v. Wise,* 769 F.3d 1202, 1210 (10th Cir. 2014). "[D]ismissal under Rule 12(b)(6) 'is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (quoting *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001)).

# I object to the dismissal on 11th amendment immunity/ Lack of subject matter jurisdiction

Therefore, Plaintiff's official-capacity claims for money damages are barred by the Eleventh Amendment and should dismissed for lack of subject matter jurisdiction.2 Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994). (RMJ. Doc. 38, P.7)

MARCUS ALLEN, TYLER BRESSON, NICHOLAS HAMAKER, ERIC ANDERSON, are city police officers, and CITY OF COLORADO SPRINGS is a municipality. City police and municipalities have been sued in the 10 circuit and supreme court. These cases have not been dismissed for 11th Amendment and Subject Matter Jurisdiction.

"The sixteen Plaintiffs filed a complaint in New Mexico state court, raising nine counts against either the officers, Capt. Gonzales, the City, or a combination of these defendants, alleging violations of their rights under 42 U.S.C. § 1983, and various state torts."
*Buck v. City of Albuquerque*, 549 F.3d 1269, 1273 (10th Cir. 2008)

The defendants removed the case to federal court, and Capt. Gonzales sought summary judgment as to each of the above claims. The district court denied summary judgment to Capt. Gonzales on the unreasonable seizure and arrest claims relating to the Arrested Plaintiffs. The district court found that Capt. Gonzales undisputedly "played a role in developing the APD's plan for the protest and acted as the incident commander in charge."

*Buck v. City of Albuquerque*, 549 F.3d 1269, 1273-75 (10th Cir. 2008)

Accordingly, we affirm the district court's denial of summary judgment and denial of qualified immunity as to (1) the unlawful seizure and arrest claims, (2) Capt. Gonzales's personal involvement in and the clearly established nature of the excessive force claims, and (3) the clearly established nature of Plaintiffs' First Amendment retaliation claims.

*Buck v. City of Albuquerque*, 549 F.3d 1269, 1293 (10th Cir. 2008)

In "Trent Michael TAYLOR v. Robert RIOJAS, et al." *Taylor v. Riojas*, 141 S. Ct. 52, (2020)

The Supreme Court holding that correctional officers were not entitled to qualified immunity where inmate was confined in a pair of shockingly unsanitary cells for six days.

Confronted with the particularly egregious facts of this case, any reasonable officer should have realized that Taylor's conditions of confinement offended the Constitution. We therefore grant Taylor's petition for a writ of certiorari, vacate the judgment of the Court of Appeals for the Fifth Circuit, and remand the case for further proceedings consistent with this opinion.

*Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020).

## I Object to the dismissal of my Free Exercise Claim

"The principle that government, in pursuit of legitimate interests, cannot in a [selective manner impose burdens only on conduct motivated by religious belief] is essential to the protection of the rights guaranteed by the Free Exercise Clause. " Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 543 (1993)

All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

Plaintiff alleges on January 21, 2019, Defendant Allen "forced [Plaintiff] into a non consensual interrogation that did cause [Plaintiff] to stop [his] prayer" and also alleges Defendant Allen demanded that "the door man" open the door. (Id., ¶ 10.) Plaintiff does not allege that Defendant

Allen ever directly contacted Plaintiff or told Plaintiff to stop smoking cannibis. (RMJ. Doc. 38, P.7)

With all do respect it seems that Magistrate Tafoya, is simply cutting and pasting what the defense entered in their motion to dismiss. If she would have read my Amended Complaint (Doc 21) and or my response to the defendants motion to dismiss. (Doc 33) she would know that Defendant Allen did make direct contact with me.

"The Defendant Allen was yelling through the door. Defendant Allen yelled open the door to both me and the individual who was running the front door." [Doc 21 ¶¶ 9,] (Response to MTD Doc 33, P.2)

Defendant Allen would never state what he needed. The officer just kept giving orders to the front door guy and me. You need to open this door. Defendant Marcus Allen became aggressive when I would not open the door. He continued to demand that I opened the door. This caused me fear. The implied license to knock and talk had been revoked, by the posting on the church. I had a right to privacy. This was not a consensual interaction. There was no reasonable suspicion for the search of my person or the detainment of my person. [Doc 21 ¶¶ 9,] (Response to MTD Doc 33, P.3)

Defendant Allen actions were not legitimate law enforcement actions, and did have a Chilling affect.

> "This is when I began to worry. Because I had no idea of why the officer Defendant Allen was at the church. It was clear the Defendant Allen was trying to get Inside the church. How Defendant Allen was standing, it came to my conclusion, if the front door was opened Defendant Allen would rush in. There was no implied license, for Defendant

5

Allen to conduct a knock and talk. Defendant Allen also never stated why he was at my church. Defendant Allen Just kept demanding that the door be opened. The table where I sat was only a few feet from the front door. Even though Defendant Allen could not see me because of the tint on the door. I could hear and see him. This was not a consensual encounter. And there was no legitimate law enforcement reason to demand the door man and or me open the door and give him access. During this time, I felt compelled to open the door. If I did not open the door, I would not be following the orders of a police officer. I would then be arrested. Defendant Marcus Allen forced me into a non consensual interrogation that did cause me to stop my prayer. Since the implied license was revoked. Actions of defendant Allen violated the fourth amendment. Defendant Alan demanding that I open the door also put me in a position where I felt I would be arrested. Not following an officers' orders also can results in death1 . Devon Bailey was shot multiple times in the back for not following orders. CSPD never seen a gun. Like Devon Bailey I am a person of color."(Doc 21 P.7)

"I could also see from the cameras and through the tinted front door, that defendant Allen was becoming more and more upset. Defendant Allen moved his attention to a church member, in the parking lot. From my view of the TV Monitor over the door, Defendant Allen then gave orders to this individual and did detain this individual. For the following is a picture of the member who was detained. I also have video evidence that shows this individual was not released until supervisor Tidwell showed up. In the video officer Tidwell gave the following order that allowed the detained individual to enter his church. Supervisor Tidwell reply's with "This individual here, if he is a member of your establishment, he is allowed to go in. I am OK with him going inside."  (Doc 21 P.8,9)

Officer Tidwell giving the order to release the other church  member who was detained by Defendant Allen shows that the actions of Allen were not "legitimate law enforcement activity"

The First Amendment prohibits law enforcement officers from interfering with an individual's religious liberty—including the right to pray —at least where that interference is not justified by a legitimate law enforcement objective. See *McTernan v. City of York*, 564 F.3d 636, 647–51 (3d Cir. 2009); see also Hernandez v. Comm'r, 490 U.S. 680, 699 (1989) ("The free exercise inquiry

6

asks whether government has placed a substantial burden on the observation of a . . . religious belief or practice and, if so, whether a compelling governmental interest justifies the burden."); cf. *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989) (even a "prisoner's first amendment right to the free exercise of his religious beliefs may only be infringed to the extent that such infringement is 'reasonably related to legitimate penological interests'")

I reasonably interpreted it—as any similarly situated person would have—as carrying the threat of arrest should I fail to comply. *United States v. Allen*, 813 F.3d 76, 88 (2d Cir. 2016) ("The command of an officer, legally entitled to make an arrest . . . is, and should be, a sufficient exercise of authority to require the suspect to comply with that command."); *United States v. Flowers*, 336 F.3d 1222, 1226 n.2 (10th Cir. 2003) ("[A] reasonable person confronted by . . . a command by one of the officers . . . would have believed that he had to . . . submit to the show of authority."). my understanding of the command is further bolstered by the fact that Defendant Allen had detained another member who was in the parking lot. I was sure, I would be next.

And it is well established that an officer's threat of arrest burdens one's exercise of religion—precisely because it is "coercive or compulsory." See *Fields*, 753 F.3d at 1009; see also *McTernan*, 564 F.3d at 647–51 (ruling threat of arrest unconstitutionally burdened Free Exercise rights); *Hodgkins* ex rel. *Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004) ("The Supreme Court has often noted that a realistic threat of arrest is enough to chill First Amendment rights.") (citing cases); *Barich v. City of Cotati*, 2015 WL 6157488, at *1 (N.D. Cal. Oct. 20, 2015) ("No reasonable trier of fact could doubt that a person of ordinary firmness would be deterred by the threat of arrest.") (citing *Hodgkins*, 355 F.3d at 1056).

Defendant Allen was becoming upset, he arrested other members, I also did not follow his orders to open the door.  The totality of the circumstances did put me in fear and did have a chilling affect on my free exercise.

> "Then I seen more cops pulling up. I have anxiety. This caused me to start having a panic attack. I was sure more cops would show up and they would violate my probation. I was barely making it, with a class and all I had to pay for, and the interlock system in my car. At this time it fell like my entire world was crashing down on me." (Doc 21 P.10)

Also understand the person detained, was detain for ½ hour without a reason. I was sure I would be next.

> "The following is what the individual who was restricted to staying in his car by orders given by Marcus Allen had to say about the entire ordeal. His statement was taken from cell phone video. Delbert Sgaggio "how long have you been stuck out here bro?" The individual pictured above states "at least ½ hour probably" The individual pictured then states " I pulled up and he (Defendant Allen) said wait in your car for a minute. I didn't want to cause any problems so I waited in my car, I just wanted to respect his orders. I did not want any problems." (Doc. 21 P. 11)

Watching other members be detained for no legitimate law enforcement reason did have a chilling effect on me.

"I did not come back to my church for two or three months. The police really scared me. I also wasn't sure if they got my plate number and was planning to retaliate against me." (Doc. 21 P. 11)

How can Magistrate Tafoya state that "Plaintiff does not allege that Defendant Allen ever directly contacted Plaintiff or told Plaintiff to stop smoking cannibis." (RMJ. Doc. 38, P.7)

Magistrate Tafoya, has errored and must "accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to me the pro se  plaintiff," *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007)

8

Magistrate Tafoya actually states twice I never had contact with any Defendants. "However, Plaintiff fails to allege any direct contact with any defendant, let alone that any of them directly coerced or compelled him to cease worshiping." (RMJ. Doc. 38, P.7)

Magistrate Tafoya contradicts herself.  Plaintiff does not allege that Defendant Allen ever had contact with Plaintiff other than through a door. (Id., ¶¶ 7, 9, 10.) (RMJ. Doc. 38, P.7)

I am in shock because I clearly state these allegations that showed I had interactions with Defendant Allen in both my Amended Complaint(Doc 21) and my response to the Defendants Motion to dismiss(Doc 33).

Now the Magistrate states that contact was made. Also how does a glass door stop direct contact. If this was true, then how do police announce that they are police? If the officer doesn't make direct contact with me, how did I know he was giving orders for me to open the door.  I could hear Defendant Allen I could see him through the glass and the camera. His threats of arrest did make me fearful.  People make threats on the phone and on social media. These are crimes. How does this not apply to Defendant Allen?

## I object to the dismissal of my Illegal Search and my Illegal seizure Claim

All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

"A search only violates an individual's Fourth Amendment rights if he or she has a 'legitimate expectation of privacy in the area searched.' " *United States v. Ruiz*, 664 F.3d 833, 838 (10th Cir. 2012).

Plaintiff also fails to allege that he had a legitimate expectation of privacy in the areas that Defendant Allen physically entered—the parking lot and the front porch of the Green Faith property. (Am. Compl. at 5–6, ¶ 12.) (RMJ. Doc. 38, P.11)

I was inside my Church.

"There was no implied license, for Defendant Allen to conduct a knock and talk. Defendant Allen also never stated why he was at my church. Defendant Allen Just kept demanding that the door be opened. The table where I sat was only a few feet from the front door. Even though Defendant Allen could not see me because of the tint on the door. I could hear and see him. This was not a consensual encounter. And there was no legitimate law enforcement reason to demand the door man and or me open the door and give him access." (Doc 21 P.7)

The honorable Magistrate also states (Am. Compl., ¶ 6 & at 4.) An objective officer reasonably could have understood the notice "as restating the 'no-trespassing' principle without thinking it had any bearing on the implicit license to enter the curtilage for social reasons." Carloss, 818 F.3d at 999–1000 (Tymkovich, C.J., concurring). The officer "might well take" the "sign simply to reiterate that he could not enter the property if he was forbidden to do so, not that it actually forbade him to enter." Id. at 1000 n.1 (emphasis in original). The notice further states, "Those so trespassing are subject to civil and criminal penalties .…" (Am. Compl. at 4.) But "state law is not determinative of objective 'reasonableness'" under the Fourth Amendment. Id. at 1001. Because "[t]he message here does not clearly and unambiguously tell [visitors] that they cannot knock on the front door seeking a consensual conversation with [the occupants]," Defendant Allen's attempted knock-and-talk was reasonable. Id. at 997. (RMJ. Doc. 38, P.13)

The officer "might well take" the "sign simply to reiterate that he could not enter the property if he was forbidden to do so, not that it actually forbade him to enter." (RMJ. Doc. 38, P.13)

The notice on the door forbade the officer Defendant Allen from being on the property. However Defendant Allen stood on the property after reading the sign for at least ½ of an hour and did give commands to me who was inside the building.

Warning—Private Property, No trespassing Without the owners [sic] express verbally [sic] or written authorization. This includes any and all Government Agents except in case of fire or medical emergency. (RMJ Doc. 38 P.12)

Notice clearly states government agents are not working on a fire or a medical of emergency they need verbal or written authorization or they will be trespassing.

"This no trespass notice is also subject to the following provisions you are hereby notified that the owner of this property requires all public officials agents or persons abide by the Supreme law of the land the US constitution ratified amendment then owners refused to permit any access search audit assessment without the presentation of warrant." (Doc. 21 P.3)

Allen knew or should have know he is a public official. He took an oath to the constitution. The notice states public official agents are not permitted access without presentation of a warrant. Its clear this notice forbade him to access the property.

"the [relevant] question is what an ordinary visitor to the business property, not knowing the subjective intent of the owner, would have objectively perceived as reasonable conduct")." United States v. Carloss, 818 F.3d 988, 995 (10th Cir. 2016)

If the ordinary visitor is a officer he is already given the owners subjected intent. Especially since the officer was called out by his official title "public officials agents" that he is not allowed access without a warrant. The occupation of church property was unreasonable.

11

"The home's occupant remains free to terminate the conversation or even to avoid it altogether by not opening the door. See King, 131 S.Ct. at 1862 " United States v. Carloss, 818 F.3d 988, 992 (10th Cir. 2016)

The notice terminates the conversation before it even starts.

This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave. Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters.

*Florida v. Jardines*, 569 U.S. 1, 11 (2013)

Defendant Allen should have left immediately after reading the notice. The notice was not an invitation to linger longer. It stated he was not allowed access without a warrant. This is a invitation to leave. It also specifically names what public official agents need in order to knock on the church door, that is a warrant. It also specifically names who requires a warrant. Notice it does not say girl scouts need a warrant.

This court has identified three categories of police-citizen encounters: "(1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." *United States v. Torres-Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998)

By this definition I was detain inside my Church.

My argument in my Response the Defense's is motion to dismiss is the following. It show a clear right to privacy.

I had a Constitutional right to privacy, the moment I stepped on to the property located at 1850 North Academy Blv. Posted is the following legal notice. This legal notice removes the implied license to knock and talk. Location is for private church members. The notice states the following: Warning Private Property, No trespassing Without the owners express verbally or written authorization. This includes any and all Government Agents except in the case of fire or medical emergency. This no trespass notice is also subject to the following provisions you are hereby notified that the owner of this property requires all public officials agents or persons abide by the Supreme law of the land the US constitution ratified amendment then owners refused to permit any access search audit assessment without the presentation of warrant. The owner of the building put this notice up to ensure my right to privacy when I pray. Notice was posted Jan, 2017. [Doc 21 ¶¶ 6,7](Doc 33 P7,8)

""the Fourth Amendment protects people, not places." " Katz v. United States, 389 U.S. 347, 361 (1967) " first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable."" Katz v. United States, 389 U.S. 347, 361 (1967) The notice that was posted, is not a store bought notice, it was specific and was much more than a no trespass sign. My right to privacy at my church was posted on the front door.[ Doc 21 ¶¶ 24] (Doc 33 P7,8)

The notice on the front door even becomes more specific towards government agents. This shows an additional level of protection to my expectation of privacy. This no trespass notice is also subject to the following provisions you are hereby notified that the owner of this property requires all public officials agents or persons abide by the Supreme law of the land the US constitution ratified amendment then owners refused to permit any access search audit assessment without the presentation of warrant. [Doc 21 ¶¶ 6,] Facts an undisputable physical evidence shows the implied license to knock and talk had been removed. No access is permitted without warrant. None of the Defendants had a Warrant. The Access to knock and talk had been

revoked. As for the second prong of Kats it been well established that religious activities do afford " the expectation be one that society is prepared to recognize as "reasonable." Confessions have been held privately through out history (Doc 33 P,9)

"All present at Mass," explained Brother Philip, "would confess their sins privately and then receive the general absolution." Private confession, he suggested, should be primarily for those who desire it and want extended personal counseling. The Reformation rejected Catholic belief that Penance was a Christ-instituted sacrament; some Anglicans and Lutherans practice private confession, but most Protestant churches have a confession made by the entire congregation, generally at the beginning of their services.[1]

Private Baptisms also enjoy " the expectation be one that society is prepared to recognize as "reasonable."

They take place in Colorado Springs all the time. This is from Our Redeemer's Lutheran Church website. "Though it is not preferred, the pastors are willing conduct private baptisms[2]. Religious activites have the right to privacy "the expectation be one that society is prepared to recognize as "reasonable." (Doc 33 P9,10)

## I object to the Dismissal of Retaliation for Free Exercise Claim

All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

The city of Colorado Springs Knew about complaints of Constitutional violations from the building owner Delbert Sgaggio, complaints from the former Reverend Baker, and A federal lawsuit from The High Priestess, Candace Sgaggio. The city of Colorado Springs chose to follow it's custom, policy and practice of violating minorities rights. To retaliate against me, with more

---

[1] http://content.time.com/time/subscriber/article/0,33009,834152,00.html
[2] http://www.our-redeemers.com/baptism.html

violations that did have a chilling affect, on my Free Exercise, and did stop my prayer not once but twice on two different occasions. (Doc 21 P. 23,24)

### I object to the Dismissal Equal Protection Claim

It is known amongst us minorities that you have no rights when it comes to CSPD and the City of Colorado Springs . CSPD and the City of Colorado Springs will never treat minorities the same way they treat the white people in the community. . Officers following customs policies and practices that historically show CSPD violates minority's rights, The fact that Colorado Springs fellowship files a lawsuit that is very similar to mine, this shows that the city of Colorado Springs continues to target minorities at their place of worship. I have searched throughout all Colorado Springs newspapers, and I have never seen this type of conduct happened to white owned religious organization. Or any religious organization where the parishioners are majority white.(Doc 21 P. 23,24)

### I object to the Dismissal Right of Association Claim and Equal Protection Claim

All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

The city of Colorado Springs Knew about complaints of Constitutional violations from the building owner Delbert Sgaggio, complaints from the former Reverend Baker, and A federal lawsuit from The High Priestess, Candace Sgaggio. The city of Colorado Springs chose to follow it's custom, policy and practice of violating minorities rights. To retaliate against me, with more violations that did have a chilling affect, on my Free Exercise, and did stop my prayer not once but twice on two different occasions.

Defendant Allen had No legitimate law enforcement reason to even be at my church. But his Employer had a history at this location and did continue the discriminatory activities.

## I object to Dismissal of claims Against Defendants Bresson and Hamaker

All statements of fact set forth previously are hereby incorporated into this claim as though set forth fully herein.

## I object to Granting of qualified immunity.

All statements of fact set forth previously are hereby incorporated into this as though set forth fully herein.

This objection shows plenty of clearly established law, that supports facts in my Amended Complaint, that show my clearly established rights were violated.

**"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."** *Elrod v. Burns*, **427 U. S. 347, 373 (1976)**

I would like the court to note, I was in church.  It cannot be denied that I was engaged in my indigenous spirituality.

"I practice indigenous spirituality."(Doc 21 p.5)

"The reason I attend this church is because the head minister Candace is indigenous. She is very well versed in her teachings. She has traveled to Central America to study indigenous spirituality. She also teaches me the ways and traditions of my ancestors, since I do have indigenous blood." (Doc 21 p12)

Indigenous spirituality has always been a target of the U.S. Government.

During a solar eclipse on January 1, 1889, **Wovoka**, a shaman of the Northern Paiute tribe, had a vision. Claiming that God had appeared to him in the guise of a Native American and had revealed to him a bountiful land of love and peace, Wovoka founded a spiritual movement called the **Ghost Dance**.[3]

Mooney traced the beliefs of the Ghost Dance movement to earlier spiritual prophesies among many Indian groups that predicted a restoration of their land and the return of life as it was lived before Europeans settled the Americas. These emerged not long after the first settlements were established and conflicts between Europeans and Indians began.[3]  So although the Ghost Dance seemed to emerge suddenly, the ideas found in it had a long history among many different Indian groups.[4]

The Ghost Dance was associated with one of the great tragedies of American history. In December 15, 1890, during a dispute about a Ghost Dance ceremony, police killed Chief Sitting Bull at Standing Rock Reservation, South Dakota. After this, a group of over 300 Miniconjou Lakota men, women, and children led by Chief Spotted Elk (also called Big Foot) left the Standing Rock Reservation to try and reach the relative safety of the Pine Ridge Reservation. They were detained by United States Army at a creek called Wounded Knee and held at gunpoint, including Hotchkiss guns, an early type of machine gun. The men were separated from the women and children and as the soldiers confiscated weapons from the men, something happened and shooting began. According to some accounts one man, who may have been deaf, refused to give up his rifle. The number of dead is among many things about this incident that are disputed, but between 150 and 300 Indians were killed, many of them unarmed women and children.[5]

131 years later the government continues to target the indigenous (me) for how I choose to pray and my spiritual beliefs. I will not conform and bow to a White Jesus.  I ask the court to stop the despicable actions of the Colorado Springs government.  In America you can discriminate against gays if your white Jesus tells you to.  But if you don't pray to a White Jesus is then you cannot pray in peace. I pray to

---

[3] https://www.khanacademy.org/humanities/us-history/the-gilded-age/american-west/a/ghost-dance-and-wounded-knee
[4] https://blogs.loc.gov/folklife/2017/11/james-mooney-recordings-ghost-dance-songs/
[5] https://blogs.loc.gov/folklife/2017/11/james-mooney-recordings-ghost-dance-songs/

Grand Father Sky, and Mother Earth, that the 1st amendment will protect my sincerely held spiritual beliefs.

## Conclusion

I ask the court grant all of my objections.  I also ask have the court to move forward with discovery so that a jury can decide my damages.

CERTIFICATE OF SERVICE (CM/ECF) I hereby certify that on Feb 3rd, 2022, I electronically filed the foregoing Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing. I further certify that a true and correct copy of the same was E - mailed to the following party via the internet.

Anne H. Turner,

Assistant City Attorney

30 S. Nevada Ave., Suite 501

 Colorado Springs,

 Colorado 80903

Telephone: (719) 385-5909

 anne.turner@coloradosprings.gov

Respectfully submitted this (3rd day of February , 2022).

By: s/ Christian Diaz Christian Diaz

 1850 North Academy Blv.

 Colorado Springs Colorado 80909

Overclock420@hotmail.com

719-985-5567